## IN THE UNITED STATES DISTRICT COURT
## COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BETHANY DITZLER,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 1:21-CV-01852** |
| | : | |
| **PINNACLE HEALTH OBSTETRICS** | : | **JUDGE CONNER** |
| **AND GYNECOLOGY SPECIALISTS,** | : | |
| **PINNACLE HEALTH MEDICAL** | : | **MAG. JUDGE SAPORITO** |
| **SERVICES, UPMC PINNACLE** | : | |
| **HOSPITALS, UPMC PINNACLE,** | : | **ELECTRONICALLY FILED** |
| **BEVERLY A. HALL NDLOVU,** | : | |
| **And LEE BLECHER, MD,** | : | |
| | : | |
| **Defendants.** | : | |

### DEFENDANTS' JOINT SUR REPLY BRIEF IN SUPPORT
### OF MOTION FOR SUMMARY JUDGMENT

Frank J. Brier
Fred J. Lokuta
Myers, Brier & Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503

Stuart T. O'Neal, Esquire
Marcy B. Tanker, Esquire
Burns White LLC
1001 Conshohocken State Road, STE 1-515
West Conshohocken, PA 19428

Michael C. Mongiello, Esquire
Karen E. Minehan, Esquire
Marshall Dennehey PC
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011

## INTRODUCTION

Pursuant to this Honorable Court's Order of June 2, 2025 (ECF 129), Defendants now set forth the instant Joint Sur Reply Brief in Support of their respective Motions for Summary Judgment.

## LEGAL ARGUMENT

**A.    Plaintiff has not established that UPMC Pinnacle Hospitals had actual or constructive notice of any allegedly substandard care provided to the patient and, accordingly, her corporate negligence claim should be stricken.**

The concept of the Hospital having actual or constructive notice of the defects or procedures that created harm is one of the required components to establish corporate negligence.  As early as 1985, the Pennsylvania Superior Court noted that the component of actual or constructive notice is critical, as the corporate negligence doctrine contemplates a "kind of systemic negligence in the actions and procedures of the hospital itself rather than the individual acts of its employees."  *Edwards v. Brandywine Hosp.,* 438 Pa. Super. 673, 653 A. 2d 1382, 1386 (1985).  In *Kennedy v. Butler Memorial Hosp.,* 901 A.2d 1042 (Superior Court of Pa. 2006) the Court noted that the notice component of a corporate liability claim is critical to differentiate a claim of corporate liability from a claim of vicarious liability.

In her Amended Brief in Opposition to Defendant Hospital's Motion for Partial Summary Judgment as to Corporate Liability, Plaintiff continues to argue that Moving Defendant had constructive notice of the alleged negligence occurring in

this case. In support of the same, Plaintiff cites to *Whittington v. Episcopal Hospital,* 768 A. 2d 1144 (Pa. Super. 2001); *Thompson v. Nason Hosp.,* 591 A. 2d 703 (Pa. 1991); and *Hernandez-Anguera v. Main Line Hospitals., Inc.,* 2014 WL 12605468 (E.D. Pa. 2014).[1] The facts of those cases involved allegedly negligent conduct and care **over a period of time** that would have allowed an opportunity for the Hospital to be made aware of and correct the problem. In *Whittington,* Plaintiff offered an expert opinion that the failure to recognize the need for caesarean delivery constituted **negligent obstetrical care of the patient which occurred on December 15, 22, 24 and 25**, ultimately causing her death from toxemia. The Superior Court held that Plaintiff had established "numerous and recurring deviations from the standard of care" which established that the Hospital could properly be charged with constructive notice. *See Whittington* at 1153.

Although cited by Plaintiff to support her position on constructive notice, the Court in *Thompson v. Nason Hosp., supra.,* did not conduct an analysis of actual or constructive notice. In that case, the patient was injured in an automobile accident on March 16, 1978 and was admitted to Nason Hospital. **During the subsequent four (4) days, her condition deteriorated,** appropriate consultations allegedly did not occur, and she was over-coagulated. Ultimately, she was transferred to another

---

[1]   The unpublished decisions cited herein are reproduced in the attached Appendix pursuant to Local Rule 7.8(a).

hospital and was found to have an intracerebral hematoma. Although the Supreme Court noted that for a hospital to be charged with negligence, it is "necessary to show that the hospital had actual or constructive knowledge of the defect or procedures which created the harm," the Court did not examine that factor, holding only that the record established a sufficient question of material fact as to whether Nason Hospital was negligent in supervising the quality of medical care. *Id.* at 343.

In *Hernandez-Anguera v. Main Line Hospitals, Inc., supra.,* Plaintiff suffered injury as a result of high blood pressure and symptoms of preeclampsia which were not suspected or treated. Although, a specific time-line for the symptoms and care cannot be discerned from the opinion. Plaintiff's experts opined that new onset high blood pressure and severe headache in a post-partum patient such as Plaintiff must be urgently and aggressively treated.

References to the Plaintiff's expert reports throughout the opinion suggest that the deficiencies in care occurred over a period of time; namely that there was a failure among the hospital nursing staff to communicate significant findings; inadequate blood pressure monitoring by the nursing staff; failure on the part of treating physicians to read triage nursing notes; and failure on the part of an anesthesiologist to communicate his opinion that Plaintiff's headache was not due to "post-dural puncture headache."

The Court concluded: "Regarding notice, the evidence is **minimally**

**sufficient** to create a genuine dispute as to whether the hospital should have known that its policies or oversight were inadequate (if they were)." *Id. at \*4* (emphasis added).

The facts of *Whittington v. Episcopal Hospital, supra.,* and *Thompson v. Nason Hosp., supra.,* suggest that the allegedly negligent care occurred over a period of time sufficient to support the proposition that the hospital had notice that negligent care was occurring. In *Hernandez-Anguera v. Main Line Hospitals., Inc., supra.,* the Court recognized that the evidence was only "minimally sufficient" to create a genuine issue as to notice.

The most recent pronouncement by the Pennsylvania courts on the issue of notice in the context of corporate liability is found in *Corey v. Wilkes-Barre Hospital Company, LLC,* 307 A. 3d 701 (2023). In that case, Plaintiff attempted, unsuccessfully, to establish corporate liability on the part of the Hospital based upon allegedly negligent care in the Emergency Room. The Superior Court stated:

> Here, the [trial] court correctly entered a nonsuit on Appellant's corporate negligence claim. This case did not involve "a kind of systemic negligence" on the part of WBGH. [citation omitted]. The trial evidence centered on the individual decisions and actions of a doctor and nurse in conjunction with their care of a critically ill patient. Our review of the record reveals that Appellant did not provide any expert testimony that Nurse Bond's medical care of the patient fell below acceptable medical standard to warrant the imposition of constructive notice onto WBGH. [citation omitted]. Nurse Bond was providing the medical care that the doctor had ordered for Decedent, and this care led her to observe that Decedent's systolic blood pressure had dropped. Rather than sitting back and watching Decedent deteriorate, Nurse

Bond proactively sought advice from the attending physician on the next steps for treatment. Based upon the foregoing, the court did not abuse its discretion or make an error of law by entering nonsuit on Appellant's corporate negligence claim.

Similarly, in this case, the evidence and expert reports focus on the "individual decisions and actions" of Dr. Blecher and Dr. Ndlovu in the context of a single obstetric patient. Plaintiff has produced nine (9) reports from her experts, both initial and supplemental, none of which contain any allegation that the nursing staff at UPMC Pinnacle Hospital breached the standard of care or was in some way sub-par. In fact, Dr. Borow reiterates the testimony in this case from Plaintiff's mother, Tammy Furjanic, Ms. Watkins, and Lon Ditzler that the Hospital nurses summoned Dr. Ndlovu to assist Dr. Blecher and offers no criticism of the nurses or other staff. *See* ECF 122-3 at pp. 4-5.

As there is no expert testimony supportive of any alleged negligence of UPMC Pinnacle Hospital **staff,** case law involving actual or constructive knowledge on the part of the hospital based upon conduct of the staff is inapplicable.

Plaintiff alleges that UPMC Pinnacle Hospital would have had notice in this case that Dr. Ndlovu was "allowing residents and fellows to deliver babies unsupervised." *See* ECF 122 at p. 9. However, there is no evidence in this case that Dr. Ndlovu was systemically allowing residents and fellows, against hospital policy or otherwise, to perform deliveries when they were not permitted to do so. *Id.*

Ultimately, the exercise of clinical decision-making during one (1) delivery over the course of one (1) presentation does not equate to systemic or institutional negligence. As defined in *Edwards v. Brandywine Hosp.*, 652 A.2d 1382 (Pa. Super. 1995), the standard of "routine" or systemic problems explained in *Thompson* is not also one of strict liability:

> … a hospital is not directly liable under *Thompson* just because one of its employees or agents makes a mistake which constitutes malpractice… *Thompson* contemplates a kind of systemic negligence, such as where a hospital knows that one of its staff physicians is incompetent but lets that physician practice medicine anyway; or where a hospital should realize that its patients are routinely getting infected because the nursing staff is leaving catheters in the same spot for too long, yet the hospital fails to formulate, adopt or enforce any rule about moving catheters. *Thompson* does not propound a theory of strict liability…

Here, the *most* that Plaintiff may possibly have established is a single act of negligence by an individual for whom the hospital may be responsible on the basis of vicarious liability, but she has failed to offer evidence that the hospital had actual or constructive knowledge of any negligent conduct or policy deficiencies which would establish liability for corporate negligence.

Accordingly, for the reasons stated above, Defendant, UPMC Pinnacle Harrisburg, respectfully requests this Honorable Court grant the instant motion and dismiss any and all claims of corporate negligence against Defendant, UPMC Pinnacle Harrisburg, *with prejudice*.

**B.     Regarding the Joint Motion of Defendants for Partial Summary Judgment as to Allegations in the Complaint Not Supported by Expert Testimony (ECF 80, 81), Plaintiff has Offered No Opposition to the Dismissal of Paragraphs 38 (f), (n), (o), (q), (t), (u), (v), and (w) and 40(g), <u>and the Joint Motion Should be Granted as to These Paragraphs</u>.**

Upon review of Plaintiff's Amended Brief Supporting Plaintiff's Response in Opposition to Defendants' Joint Motion for Partial Summary Judgment as to Certain Allegations Not Supported by Expert Testimony (ECF 124), it is clear that  Plaintiff offers no opposition to summary judgment as to Paragraphs 38 (f), (n), (o), (q), (t), (u), (v), and (w) and 40(g).  Accordingly, summary judgment as to these paragraphs should be granted.

**C.     Regarding the Joint Motion of Defendants for Partial Summary Judgment as to Allegations in the Complaint Not Supported by Expert Testimony (ECF 80, 81), Plaintiff's Opposition to Summary Judgment as to Paragraphs 38(i), 40(b) and 40(d) is Meritless and Summary Judgment <u>Should be Granted as to These Paragraphs</u>.**

Plaintiff has failed to point to any evidence which establishes that the Defendants held out their "expertise which induced plaintiff's mother to believe that adequate and proper care would be provided when, in fact, adequate, proper and reasonable care was not provided when treating and delivering plaintiff." *See* Complaint (ECF 1) at ¶38(i). While Plaintiff may have believed that proper care would be provided, Plaintiff points to no conduct on the part of Defendants which did induce that belief.  On the contrary, Plaintiff states that she came into contact with Dr. Ndlovu, "when she was a nursing student" and that "based on her

interactions," she believed proper care would be provided. There is simply no evidence or expert opinion that supports the allegation contained in Paragraph 38(i) and summary judgment should be granted.

Paragraphs 40(b) and 40(d) of the Complaint allege that Plaintiff **suffered** "Hospitalization" and "large and unnecessary medical bills incurred". (ECF 1)  In support of these allegations, Plaintiff merely cites the life care plan prepared by her expert, Valerie Parisi.  However, the life care plan consists of recommendations for potential **future care** that Plaintiff may need and the potential costs of future care. Neither Ms. Parisi nor any other expert for Plaintiff expresses the opinion that Plaintiff suffered "Hospitalization" and "large and unnecessary medical bills."

There is simply no evidence that supports the allegation contained in Paragraphs 40(b) and 40 (d) and summary judgment should be granted.

**D.    Plaintiff's <u>express admissions</u> regarding evidentiary deficiencies relative to plaintiff's only remaining claim against Dr. Ndlovu for supervisory negligence, despite an allowed "do over" effort, collectively fortify that there is no genuine issue of material fact on this claim, such that <u>summary judgment should be entered in favor of Dr. Ndlovu.</u>**

As permitted by this Honorable Court by Order of April 16, 2025 (ECF 121), Plaintiff has filed an Amended Responsive Statement (ECF 127) to the Concise Statement of Undisputed Materials Facts in Support of Motion to Preclude Unreliable and Speculative Opinion Testimony by Plaintiff's Expert Obstetrician, Lawrence S. Borow, M.D. and Expert Pediatric Orthopedist, Joshua M. Abzug, M.D.

and *Ipso Facto* Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 of

Defendant, Beverly A. Hall Ndlovu, M.D. (Filed as Required Under L.R. 56.1) (ECF

84).[2]  Dr. Ndlovu now timely files this Sur Reply pursuant to the Court's Order of

June 2, 2025 (ECF 129).

Despite having been provided with the proverbial "second bite at the apple"

to overcome the subject Motions of Dr. Ndlovu, Plaintiff has failed to do so.  Instead,

Plaintiff's amended filings on the issues *sub judice* actually serve to **reinforce** why

Dr. Ndlovu is entitled to pre-trial dispositive relief, as detailed below.

First, **Plaintiff has now expressly admitted critical, *<u>liability absolving</u>***

***<u>evidentiary deficiencies</u>*** regarding her **only remaining claim against Dr. Ndlovu**

(*see* Dr. Ndlovu's Reply Brief (ECF 116), for supervisory negligence, based upon

the alleged underlying conduct of Dr. Blecher.  Specifically, Plaintiff has ***<u>admitted</u>***

that there is ***<u>no evidence</u>*** that Dr. Ndlovu was: earlier notified of, **or otherwise**

**aware that**, Ms. Furjanic was even delivering Bethany and failed to attend;

previously requested to assist with Bethany's delivery and did not timely comply;

unavailable when summoned; delayed in responding when summoned; applied any

degree of traction relative to her late and limited involvement in the delivery of

---

[2]    Plaintiff also filed an "Amended Omnibus Brief Supporting Plaintiff's
Responses in Opposition to Motions to Preclude Experts and for Summary Judgment
by Defendants, Dr. Ndlovu and Dr. Blecher" (ECF 126), although upon review, there
are no substantive amendments contained therein.

Bethany, and certainly not with excessive force and angle, as alleged in this matter; or present when Dr. Blecher was allegedly pulling on Bethany.  <u>Compare</u> Dr. Ndlovu's Concise Statement of Undisputed Material Facts (ECF 84) and Plaintiff's Amended Responsive Statement thereto, at ¶¶ 22, 35-38 and 41.  Rather, and also as **admitted by Plaintiff**, upon later being made aware of Bethany's in-progress delivery**,** Dr. Ndlovu's involvement was **limited to the performance of an episiotomy** (which is **not** the subject of expert criticism (*Id.* at ¶ 76)), after which Bethany was born "within moments." *Id.* at ¶¶ 23-26 and 39.[3]

To reiterate, Plaintiff's basic liability theory against Dr. Ndlovu, as advanced by Plaintiff's obstetrical "expert" Dr. Borow[4] is that she breached the standard of care as follows:

> If Dr. Hall-Ndlovu, the supervising obstetrician of the residents and family practice fellows in the morning of August 17, 2001, ***permitted*** **either of these physicians in training to attempt delivery of Ms.**

---

[3]    Other remarkable **evidentiary concessions** made by Plaintiff relevant to her supervisory negligence claim include that: Dr. Blecher was a post-residency obstetrical fellow at the relevant time, and not a "resident," as inaccurately alleged by Plaintiff (*Id.* at ¶¶ 3, 14); and obstetrical attendings, such as Dr. Ndlovu, were "somebody [Dr. Blecher would] go to if [he would] have an issue" as a post-residency obstetrical fellow (*Id.* at ¶ 17).

[4]    Of note, Plaintiff has now also **admitted** Dr. Borow's lack of qualifications to even opine on the obstetrical standard of care applicable in this matter, considering that he has not delivered a baby since approximately 2008, more than seventeen (17) years from.  *Id.* at ¶ 51.  Otherwise, and again by **admission**, Plaintiff's pediatric orthopedic expert, Dr. Abzug, has no education, training or experience relative to the obstetrical standard of care and is accordingly not offering any such opinions in this matter.  *Id.* at ¶¶ 66-69.

**Furjanic's fetus without her direct supervision** it would be a breach of the standard of care putting both mother and baby at increased risk of harm.  If instead Dr. Hall-Ndlovu **was present for the entire time of this delivery**, she then breached the standard of care by ***permitting*** **her trainees or by her own direct care by applying excessive downward traction on the fetal head, applying off axial forces to relieve the shoulder dystocia, performing excessive rotation of the fetal head or any combination of the above maneuvers** causing a permanent brachial plexus injury to baby Bethany Ditzler.

*Id.* at ¶ 56.   These alternative opinions, previously described as baseless and speculative, are now ***patently contrary to the evidence*** considering the following trio of **admissions** by Plaintiff: 1) there is **no evidence** that Dr. Ndlovu was notified or aware that Bethany's delivery was occurring (i.e., she was **unaware** of same) (*Id.* at ¶ 35); 2) Dr. Ndlovu was **not present** when Dr. Blecher was allegedly applying improper traction (*Id.* at ¶ 22); and 3) there is **no evidence** that Dr. Ndlovu herself applied any degree of traction relative to her late and limited involvement in the delivery of Bethany (i.e., she could **not** have applied improper traction) (*Id.* at ¶ 41).

    These **admissions** by Plaintiff are *sina qua non* fatal to both facets of Dr. Borow's liability theory against Dr. Ndlovu.  With the **admitted** grounding that Dr. Ndlovu was **unaware** that Ms. Furjanic was delivering Bethany, it is ***impossible*** for Dr. Ndlovu to have breached the standard of care by either **permitting** the alleged unsupervised delivery attempts by an obstetrical fellow or **permitting** the improper application of traction in her presence, as asserted by Dr. Borow.  It is likewise ***impossible*** for Dr. Ndlovu to have personally caused a shoulder dystocia in Bethany.

11

Bearing in mind Dr. Borow's central assertion that improper traction was the causal mechanism for Bethany's shoulder dystocia, it is **now established fact** that Dr. Ndlovu ***did not apply any traction***.

Plaintiff's **admission** of critical evidentiary deficiencies relative to her supervisory negligence claim against Dr. Ndlovu, **following a second opportunity to establish otherwise**, verifies that there is no genuine issue of material fact for submission to a jury on this claim.  Such admissions also cause the opinions of Plaintiff's own obstetrical "expert," Dr. Borow, to **specifically contradict** the evidence developed in this matter.  Pursuant to the law cited in Dr. Ndlovu's original Brief (ECF 85), this Honorable Court has a gatekeeping function to ensure that speculative and unreliable expert testimony does not reach the jury (*Id.* at pp. 11-12 and 30) and it would now be an understatement to describe Dr. Borow's opinions as such.  Dr. Borow's opinions are fictitious, misrepresentative of the facts and severely prejudicial.  The **unavoidable conclusion** on the totality of the factual evidence, combined with Plaintiff's intended expert testimony, following extensive briefing of the issues presented (including a second chance by Plaintiff), is that summary judgment should be entered in favor of Dr. Ndlovu and against Plaintiff.

**E.    Nothing in Plaintiff's Amended Filings Presents New Argument Addressing the Unsubstantiated Opinions of Plaintiff's Experts Regarding Excessive Downward Traction, Off-Axial Forces, and/or <u>Excessive Rotation of the Fetal Head Allegedly Applied by Dr. Blecher</u>.**

Pursuant to this Honorable Court's Order of April 16, 2025 (ECF 121),

Plaintiff filed an Amended Omnibus Brief Supporting Plaintiff's Responses in Opposition to Motions to Preclude Experts and for Summary Judgment by Defendants Dr. Ndlovu and R. Blecher ("Plaintiff's Amended Brief") (ECF 126). Plaintiff's Amended Brief is substantively identical to the brief's previous iteration (ECF 101).

The fact remains that Plaintiff's experts lack the factual and scientific basis to opine that Plaintiff's alleged injury was caused by improperly applied physician traction during delivery. The sole basis upon which Plaintiff's experts purport make this claim is the lay witness testimony of Cami Furjanic and Joy Watkins, upon whose 20-year recollections the experts claim to draw specialized medical conclusions that the delivering provider[5] used "excessive rotation on the fetal head or excessive traction . . . in an off-axial manner . . . resulting in stretching and partial tearing of the nerves of [Bethany's] right brachial plexus." *See* Borow Report at Ex. D (ECF 93-5) at p. 2. However, Ms. Furjanic and Ms. Watkins do not have the requisite training, background, or knowledge of physician-applied traction to know whether the traction in this case was excessive or off-axial.

Instead, Dr. Borow and Dr. Abzug are in actuality asserting *res ipsa loquitor* opinions, i.e. Ms. Ditzler suffered a brachial plexus injury, *ergo* that injury was

---

[5]    Hospital labor and delivery records are no longer available from Ms. Ditzler's birth. It has thus not been conclusively established that Dr. Blecher was the provider who participated in Ms. Ditzler's delivery.

caused by improper physician-applied traction in the setting of shoulder dystocia. This *res ipsa* theory is scientifically flawed where a brachial plexus injury can be caused by factors unrelated to improper physician-applied traction. For this reason, such theories have been previously rejected by courts because they were too speculative to meet Federal Rule of Evidence 702's standard for expert opinion admissibility. *See M.D.R. v. Temple Univ. Hosp.*, No. 22-621, 2022 WL 15173903 (E.D. Pa. Oct. 26, 2022)

Plaintiff's expert opinions are speculative and lack the necessary factual and scientific basis to meet the standard for admissible expert opinion under Federal Rule of Evidence 702. In the absence of Plaintiff's experts' speculative opinions, she cannot support a *prima facie* malpractice claim against Dr. Blecher. For the reasons set forth herein, and those more fully explained in his supporting brief, Lee Blecher MD respectfully requests that this Court grant his motion for summary judgment.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendants respectfully request that this Court grant the motions for summary judgment and enter judgment in their favor.

Date: June 12, 2025                    Respectfully submitted:

**MYERS, BRIER & KELLY, LLP**
/s/ Fred J. Lokuta
Frank J. Brier
Fred J. Lokuta
425 Biden Street, Suite 200
Scranton, PA 18503

(570) 342-6100

*Attorneys for Defendant,*
*Lee Blecher, MD*

**BURNS WHITE LLC**
/s/ Marcy B. Tanker
Stuart T. O'Neal, Esquire
Marcy B. Tanker, Esquire
1001 Conshohocken State Road,
STE 1-515
West Conshohocken, PA 19428
 (484) 567-5700

*Attorneys for Defendant,*
*UPMC Pinnacle Harrisburg*

**MARSHALL DENNEHEY PC**
/s/ Michael C. Mongiello
Michael C. Mongiello, Esquire
Karen E. Minehan, Esquire
100 Corporate Center Drive, Suite
201 Camp Hill, PA 17011

*Attorneys for Defendant,*
*Beverly Ndlovu Hall, M.D.*

## <u>CERTIFICATE OF SERVICE</u>

I, Fred J. Lokuta, hereby certify that a true and correct copy of the foregoing

Sur Reply Brief in Support of Motion for Summary Judgment was served upon the

following counsel of record via the Court's ECF system on this 12th day of June

2025:

> Thomas F. Sacchetta, Esquire
> Bruce H. McKnight, Esquire
> Sacchetta & Baldino
> 308 East Second Street
> Media, PA 19063
>
> Michael C. Mongiello, Esquire
> Karen E. Minehan, Esquire
> Marshall Dennehey PC
> Karen E. Minehan, Esquire
> 100 Corporate Center Drive, Suite 201
> Camp Hill, PA 17011
>
> Stuart O'Neal, Esquire
> Marcy B. Tanker, Esquire
> Burns White LLC
> 100 Four Falls, Suite 515
> 1001 Conshohocken State Road
> West Conshohocken, PA 19428

> /s/ Fred J. Lokuta
> Fred J. Lokuta